UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MIKE–SAB, LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>  vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION dba SILVER STATE BANK, formerly a Nevada banking company; SILVER STATE BANK; NEVADA STATE BANK; and DOES I through V, inclusive and Roe Corporations I through V, inclusive,<br><br>    Defendants. | Case No.: 2:08-cv-01762-RLH-LRL<br><br>**O R D E R**<br><br>(Motion to Dismiss–#18) |

   Before the Court is Defendant Federal Deposit Insurance Corporation's ("FDIC") **Motion to Dismiss** (#18), filed June 8, 2009. The Court has also considered Plaintiff Mike—SAB, LLC's ("SAB") Opposition (#20), filed June 23, 2009, and Defendant's Reply (#22), filed July 7, 2009.

**BACKGROUND**

   In February 2008, SAB took out a number of loans with Silver State Bank, an institution that has since gone out of business. One of these loans was a $9,000,000 construction

1

1  loan for the purchase and development of a shopping center in Las Vegas.  When Silver State
2  closed its doors, it had not disbursed the remaining $1,653,484.21 of the loan, including $700,000
3  for tenant improvements and $642,000 in interest reserves.  SAB alleges that up to the date it went
4  out of business, Silver State paid the monthly interest payment required by the loan agreement
5  from the interest reserve account, thereby allowing SAB to more easily fund other aspects of the
6  development project.
7         On September 5, 2008, the Nevada Financial Institutions Division closed Silver
8  State and the FDIC was named as the receiver.  As receiver for Silver State, the FDIC succeeded to
9  all rights, titles, powers, and privileges of Silver State pursuant to the Financial Institutions
10 Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1821, *et. seq*.  In
11 October 2008, the FDIC informed SAB that it was in default for failing to make interest payments
12 under the loan agreement.  The FDIC also refused to make any further disbursements for tenant
13 improvements, thus requiring SAB and its loan guarantors to pay out-of-pocket to complete the
14 construction project.  On March 6, 2009, the FDIC informed SAB that it would be repudiating the
15 loan agreement.  The FDIC alleges it made this decision after reviewing the loan documents and
16 determining that it would not benefit the receivership to disperse additional loan funds to SAB.
17         SAB alleges it requested an administrative hearing to try to persuade the FDIC to
18 release funds under the loan and to permit payments from the interest reserve.  The FDIC allegedly
19 never responded to this request, which prompted SAB to file suit in this Court.  On November 12,
20 2008, SAB brought claims against the FDIC, Silver State Bank, and Nevada State Bank for (1)
21 breach of the loan agreement; (2) breach of the promissory note; (3) unjust enrichment; (4) tortious
22 interference with SAB's business relationships with its contractors; (5) tortious interference with
23 SAB's business relationships with its future creditors; and (6) promissory estoppel.  On June 8,
24 2009, the FDIC filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
25 /
26 /

Procedure. For the reasons discussed below, the Court grants the FDIC's Motion in part and denies it in part.

**DISCUSSION**

**I.    Motion to Dismiss**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." While a pleading generally need not contain detailed allegations, it must allege sufficient facts "to raise a right to relief above the speculative level." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not allege sufficient facts to raise a right to relief above the speculative level if it contains nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, in order to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Ashcroft v. Iqbal*, the Supreme Court provided a two-step approach for district courts to apply when considering motions to dismiss. First, the Court must accept as true all factual allegations in the complaint. *Id.* at 1950. A court does not, however, assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Id.* at 1950; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Mere recitals of the elements of a cause of action, supported only by conclusory statements, also do not suffice. *Iqbal*, 129 S. Ct. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Id.* at 1949. Thus, where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has

3

"alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

**II.     Failure to Give Notice**

FIRREA establishes a mandatory claims procedure for all claims asserted against the assets of a failed financial institution. All creditors having claims against the failed institution must first present their claims to the FDIC for an administrative determination regarding their validity. *See* 12 U.S.C. § 1821(d)(3)–(5). FIRREA requires mandatory compliance with this administrative review process: failure comply precludes a party from seeking relief in federal district court. *See Capital Leasing, Co. v. FDIC*, 999 F.2d 188, 190 (7th Cir. 1993).

In its Motion to Dismiss, the FDIC claims SAB failed to submit proper and timely proof of its claim. In its Reply, however, the FDIC conceded that SAB submitted a notice of claim, and it withdrew its Motion to Dismiss based on SAB's alleged failure to comply with FIRREA's claims procedures. Accordingly, the Court declines to dismiss SAB's claims on this basis.

**III.    The FDIC's Power to Repudiate**

Although the FDIC admits this Court should not dismiss this case on procedural grounds, it argues that dismissal is nonetheless appropriate because "the FDIC has the statutory power to repudiate contracts, and in fact, did repudiate the [l]oan [a]greements between the FDIC and Plaintiff." (Dkt. #22, Mot. 3.) The FDIC alleges that all six of SAB's claims should be dismissed because they are each grounded in the incorrect assertion that the FDIC wrongfully repudiated the loan agreement.

When acting as a receiver of a banking institution, the FDIC may repudiate loan agreements if it concludes that it is not in the best interest of the receivership to release additional funds. FIRREA states:

/

4

(1) Authority to repudiate contracts.  In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—
    (A) to which such institution is a party;
    (B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
    (C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.  12 U.S.C. § 1821(e)(1).

The statute does not indicate that the FDIC's decision to repudiate a contract is subject to review by the Courts.  Instead, FIRREA requires only that the FDIC repudiate the contract within a reasonable time of being appointed as the receiver.  *Id.* § 1821(e)(2).  But while the FDIC may repudiate any contract it deems burdensome, it can be liable for its decision to do so, even if the repudiation is timely.  *See Monrad v. FDIC*, 62 F.3d 1169, 1172 (9th Cir. 1995). Under FIRREA, repudiation gives rise to ordinary contract damages.  *See Howell v. FDIC*, 986 F.2d 569, 571 (1st Cir. 1993).  These damages, however, are limited to "actual direct compensatory damages" determined as of "the date of the appointment of the conservator or receiver."  12 U.S.C. § 1821(e)(3).  There is no liability under FIRREA for exemplary damages, punitive damages, lost profits, or pain and suffering.  *Id.*

    *Monrad v. FDIC*, a Ninth Circuit opinion, is instructive here.  In addressing breach of contract claims filed by former bank employees, the Ninth Circuit held that "the question is not whether [the FDIC] has the authority to repudiate burdensome contracts" under FIRREA. *Monrad*, 62 F.3d at 1172.  Instead, the issue is whether, and to what extent, the FDIC is liable for damages resulting from its repudiation.  *Id.*  "Therefore, once the FDIC properly repudiates a contract, the remaining issue is whether the claimant has suffered damages of the type allowed to be compensated by statute."  *Id.*

    Given the language of FIRREA, as well as the Ninth Circuit's ruling in *Monrad*, the Court finds the FDIC properly repudiated the loan agreement with SAB.  The FDIC determined that SAB's contract with Silver State was burdensome because SAB was not making the required interest payments under the agreement.  As outlined in FIRREA, the FDIC's determination that a

1  contract is burdensome is not subject to review; instead, the only issue is whether the FDIC
2  repudiated the contract within a reasonable time. SAB, however, does not argue that the FDIC did
3  not give notice of its intent to repudiate within a reasonable time. Accordingly, the Court finds the
4  FDIC acted properly under FIRREA when it repudiated the construction loan with SAB.
5          Although the FDIC can be liable for "actual direct compensatory damages" for its
6  decision to repudiate a contract, the Court finds that SAB has not adequately stated a claim for
7  damages under FIRREA. First, SAB asks for punitive damages and attorney's fees. These are not
8  recoverable under the statute. *See* § 1821(e)(1); *see also Monrad*, 62 F.3d at 1174 (punitive
9  damages and attorney's fees are not available when claims are brought pursuant to § 1821(e)(1)).
10 Second, although SAB does seek actual damages, it seeks them only for the FDIC's failure to
11 remit additional funds under the construction loan. This claim for damages fails because FIRREA
12 only permits recovery of actual damages "determined . . . as of the date of the appointment of the .
13 . . receiver." § 1821(3)(a)(ii). The Ninth Circuit has interpreted this to mean that the FDIC is
14 liable only for damages suffered by plaintiffs prior to the FDIC's appointment as receiver. *Alltel*
15 *Information Services, Inc. v. FDIC*, 194 F.3d 1036, 1039–40 (9th Cir. 1999); *see also Monrad*, 62
16 F.3d at 1174. Because SAB seeks damages based on the FDIC's refusal to distribute funds after it
17 was appointed, SAB is not entitled to recover actual damages under FIRREA.

18 **IV.    Individual Claims**

19         The FDIC argues that SAB has failed to state a single viable claim because all of its
20 causes of action stem from the FDIC's alleged wrongful repudiation of the loan agreement. The
21 Court agrees with this assertion as to all claims except SAB's claim for unjust enrichment.

22         **A.      Breach of Contract, Tortious Interference, and Promissory Estoppel**

23         The Court dismisses SAB's claims for breach of contract, tortious interference, and
24 promissory estoppel. SAB's breach of contract claims are based on its assertion that the FDIC
25 breached its duty under the loan agreement and the promissory note agreement to release
26 additional funds. Because the FDIC properly repudiated the loan agreements, however, it was no

6

1  longer bound to release these funds.  SAB's breach of contract claims therefore fail as a matter of
2  law.  The same is true of SAB's claims for tortious interference with its relationships with its
3  contractors and for tortious interference with its relationships with future creditors.  SAB alleges
4  that by failing to release funds under the loan agreement, the FDIC interfered with SAB's business
5  relationships, thereby causing financial damage to SAB.  Again, this claim fails: the FDIC properly
6  repudiated the contract with SAB, thus relieving it of any contractual obligations toward SAB.
7  Furthermore, because the FDIC's decision to repudiate the loan agreements was authorized by
8  FIRREA, the FDIC cannot be liable in tort for doing so.  Accordingly, the Court dismisses SAB's
9  tortious interference claims.
10              Finally, the Court dismisses SAB's claim for promissory estoppel.  SAB alleges
11 that when the FDIC became the receiver, it "promised to continue to honor [Silver State's]
12 obligations to [SAB]."  (Dkt. #1, Compl. 4.)  According to SAB, the FDIC, contrary to its initial
13 representation, did not fulfill its obligation to SAB because it did not pay the monthly interest
14 payments from the interest reserve account.  Had Silver State been contractually obligated to make
15 these interest payments, this argument would have merit.  However, the promissory note cited by
16 SAB states that monthly interest payments "may be effected by Lender disbursing such amounts
17 from an interest reserve account."  (Dkt. #1, Compl. Ex. A.)  Thus, while Silver State drew
18 monthly payments from the interest reserve, the contract itself did not require it to do so.
19 Consequently, when the FDIC chose to require SAB to make these monthly payments, it did not
20 breach any obligations it had to SAB under the original construction contract.  Because the FDIC
21 did not breach any duties it had under the loan agreement, it cannot be liable under a theory of
22 promissory estoppel for stating that it would honor its contractual obligations with SAB.

23      **B.    Unjust Enrichment**

24              The Court finds SAB has properly stated a claim for unjust enrichment.  These
25 claims do not depend on the validity of the FDIC's repudiation of the loan agreement.  SAB
26 alleges that it gave money to the FDIC to be used for monthly interest payments and that the FDIC

AO 72
(Rev. 8/82)

kept this money and did not pay the interest on the note.  Taking this factual assertion as true, the Court finds SAB has stated a viable claim for unjust enrichment.  Although the FDIC properly repudiated the construction contract, it is not entitled to unjustly retain any monies it received from SAB under the loan agreement.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant FDIC's Motion to Dismiss (#18) is GRANTED in part and DENIED in part as follows:

The FDIC's Motion to Dismiss SAB's claims for breach of the loan agreement, breach of the promissory note, tortious interference with SAB's business relationships with its contractors, tortious interference with SAB's business relationships with its future creditors, and promissory estoppel is GRANTED.

The FDIC's Motion to Dismiss SAB's unjust enrichment claim is DENIED.

Dated: September 2, 2009.

_____
**ROGER L. HUNT
Chief United States District Judge**